# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAURA LARKINS,<br><br>                      Plaintiff,<br>vs.<br>DR. THOMAS MOORE, et al.,<br>                      Defendants. | CASE NO. 16cv2661-LAB (N.S.)<br><br>**ORDER GRANTING IN PART MOTION TO DISMISS** |

Plaintiff Maura Larkins, proceeding *pro se*, filed a complaint bringing claims against officials of the University of California at San Diego Health System ("UCSDHS") under 42 U.S.C. § 1983. She argues that Defendants infringed on her First Amendment free speech rights. When Defendants moved to dismiss, Larkins filed an amended complaint (the "FAC"). Defendants again moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6), and that motion is now before the Court.

**Background**

According to the FAC, Larkins is a former patient of the UCSDHS, a public entity. Larkins alleges she was falsely told she was being dismissed from care at UCSDHS because of emails she had written to her Concierge Medicine doctor, and because she had asked Concierge Medicine to do a write-up of a health problem related to an "odd set of X-rays" and "unusual biopsy reports." (FAC, ¶ 14.) In fact, she claims, she had already asked to leave Concierge Medicine and to be assigned a regular UCSDHS doctor. (*Id*., ¶ 15.)

A detailed letter dated September 11, 2014 from Dr. Lawrence Friedman outlines Larkins' behavior that UCSDHS found unacceptable, and explaining UCSDHS's expectations for her behavior in the future. (Docket no. 8 at 28–30.) Around September 14, 2014, Dr. Friedman sent Larkins another letter terminating her Concierge Medicine agreement effective October 1, and detailing reasons for the termination. (Docket no. 8 at 28–30.)

Around October 27, 2014, Defendant Dr. Moore sent Larkins a letter agreeing to suspend her dismissal if she agreed to abide by certain conditions, embodied in a Care Agreement. (*Id*. ¶ 19.) She claims the Care Agreement severely and improperly restricted her First Amendment rights. (*Id*., ¶ 20.) The only limitation on her communication she identifies is a word limit on emails she sent to any doctor she was assigned. (*Id*., ¶ 22.) The Care Agreement provided that Larkins' doctor could assign an associate to reply to her. (*Id*.) She claims this was intended to prevent her from complaining. (*Id*.)

Larkins refused to sign the Care Agreement, and Dr. Moore sent her a letter around November 17, 2014 saying she was dismissed from care. (Docket no. 8 at 39.)

The FAC alleges nefarious motives against Dr. Moore and other doctors, and it is evident she believes the Care Agreement was an attempt to prevent her from complaining about mistakes they were making in her health care. The FAC alleges various other meetings and communications and suggests that these were part of an ongoing pattern of poor health care and cover-ups of unethical conduct.

Paragraph 46 of the FAC quotes the text of an email Larkins sent on May 22, 2014 insisting that a video record of her colonoscopy be made and preserved, and rejecting UCSDHS personnel's statements that doing so was not feasible on a routine basis. Attached to the FAC are two detailed emails Larkins sent to four doctors and two others at UCSD on September 29, 2014. (Docket no. 8 at 70–72.) Larkins also sought reconsideration of her dismissal from the UCSDHS system, which was denied in a brief letter dated July 14, 2015, incorporating by reference the September 11, 2014 notice of dismissal. (*Id*. at 80.)

/ / /

The FAC asks for preliminary and permanent injunctive relief, declaratory relief, and costs, but not damages.[1] The Care Agreement and Dr. Moore's letters mentioned in this summary are attached as exhibits to the FAC.

Although Larkins describes her claims as being based on her First Amendment free speech rights, her claims could also be construed as being based on her right to petition the government for redress of grievances, because she is seeking the right to send protests and complaints about allegedly unethical behavior to particular state officers. Although neither Larkins nor Defendants specifically mentions it, retaliation is another theory under which she might proceed.

**Legal Standards**

**Fed. R. Civ. P. 12(b)(1) Motion**

Defendants argue that Larkins either lacks standing to bring her claims, or else that they are moot. Either of those, if true, would deprive the Court of jurisdiction.

Federal jurisdiction is presumed to be lacking, unless it is affirmatively shown. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006) (citing *Renne v. Geary*, 501 U.S. 312, 316 (1991)). It is well established that the party seeking to invoke the jurisdiction of the federal court has the burden of establishing that jurisdiction. *Assoc. of Medical Colleges v. United States*, 217 F.3d 770, 778–779 (9th Cir. 2000). On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), the standards that must be applied vary according to the nature of the jurisdictional challenge.

Here, the challenge to jurisdiction is a facial attack: Defendants argue that the allegations of jurisdiction contained in the complaint are insufficient on their face to demonstrate the existence of jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). When considering a facial attack on jurisdictional, the Court treats the factual allegations of the complaint as true, and the motion is granted only if the pleadings

---

[1] This was not an oversight. In her opposition to the motion to dismiss, Larkins emphasizes that she is not seeking damages — only declaratory and injunctive relief. She takes Defendants to task for suggesting that she was making a claim for damages, calling their suggestion "bizarre[ ]". (Docket no. 14 ("Opp'n") at 7:20–27.)

- 3 - 16cv2661

fail to show jurisdiction. *Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003).

Courts routinely hold that vague or unclear claims are insufficient to show jurisdiction. *See, e.g., Smith v. United Parcel Serv.*, 2014 WL 2115154 at *3 (D. Haw. May 21, 2014) (complaint that referred only vaguely to which laws gave rise to the claims failed to allege a federal question); *Denton v. Agents of Oregon*, 2012 WL 6617389 at *2 (D. Or., Dec.19, 2012) (citing *Gully v. First Nat'l Bank*, 299 U.S. 109, 117 (1936)) (vague allegations were insufficient to establish subject matter jurisdiction).

Regardless of whether the parties raise the issue of jurisdiction, the Court is obligated to do so. *See Mt. Healthy City School Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 278 (1977) (holding that court is "obliged to inquire *sua sponte* whenever a doubt arises as to the existence of federal jurisdiction"). This means that even if Defendants fail to raise a jurisdictional issue, the Court must consider and resolve it.

**Fed. R. Civ. P. 12(b)(6) Motion**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), the Court accepts as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and construes the complaint in the light most favorable to the plaintiff. *See Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004). "However, the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). Similarly, "conclusory allegations of law and
/ / /

unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

The Court may also consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice, without converting the motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

**Discussion**

Defendants point out that Larkins is only seeking prospective injunctive relief, and declaratory relief, not damages.

**Declaratory Relief**

The FAC does not say what declaratory relief Larkins wants. Perhaps she wants the Court to declare what her rights or Defendants' obligations are, or perhaps she asks for a declaration that Defendants violated her First Amendment rights. Perhaps she wants a declaration that if she were to become a patient again, Defendants would not be justified in applying the same restrictions. But whatever it is, Larkins has not shown that the Court has the power to grant that relief. The Supreme Court has explained that, in order for declaratory relief to be appropriate, the dispute must be

> "definite and concrete, touching the legal relations of parties having adverse legal interests"; and that it be "real and substantial" and "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007). The "specific relief" requirement is also related to the standing doctrine; in order to have standing, a plaintiff must show her injury is likely to be redressed through a favorable decision. *Mayfield v. United States*, 599 F.3d 964, 971 (9th Cir. 2010) (in order to establish standing to seek declaratory relief, the plaintiff had to show a "substantial likelihood" that declaratory relief would redress his injury). Because Larkins has not shown a substantial likelihood that declaratory relief would redress her injury, she has not met her burden of establishing standing to seek that relief.

In any case, the types of declaratory relief that Larkins is most likely seeking are duplicative of her claims for injunctive relief. Her opposition concludes that she does have standing, because "If the Court determines that [Defendants] violated Plaintiff's First Amendment rights by dismissing her for her speech, then [Defendants] will have to reinstate Plaintiff as a patient." (Opp'n at 7:15–18.)[2] In other words, Larkins believes that if she obtains relief, the result will not be a mere declaration of rights, but a change in Defendants' behavior. Under some circumstances a mere declaration might also accomplish a change in behavior or offer substantial relief, but here it would not.

Because Larkins has not identified any declaratory relief that would help her, nor explained why declaratory relief would remedy the injuries she says she has suffered, she has not met her burden of showing that she has standing to seek declaratory relief.

**Injunctive Relief**

When deciding whether Larkins has standing to seek injunctive relief, it is important to know what she wants. Larkins' allegations and pleadings, accepted as true, show that she was not terminated from Concierge Medicine, but left of her own accord. She emphatically asserts that she was terminated from it, but instead that she was the one who invoked her right to terminate the agreement. (Docket no. 12 (Opp'n at 12:2–15.) In fact, she charges Dr. Moore with deception for "pretending that Plaintiff was dismissed from Concierge Medicine when in truth she had already asked to leave." (FAC, ¶ 15.) Instead, Larkins' claims seem to be based on Defendants' termination of her as a UCSDHS patient. (*Id*., ¶ 14; Opp'n at 14:18–27.) Among other things, this seems to have made her ineligible to be the patient of a UCSDHS doctor. (FAC, ¶ 15.)

Defendants argue that Larkins has no standing to seek injunctive relief, because she has no doctor-patient relationship with any doctor in the UCSDHS. Larkins does not dispute the factual basis for this. She agrees Defendants turned down her request to be assigned

---

[2] Because not all parts of the pleadings and moving papers are separately paginated, this order cites the electronically-generated page numbers for clarity. In general, these numbers differ by only a few pages from the page numbers in the original documents. This quotation appears on page 5 of Larkins' opposition, for example.

a PCP, and she does not suggest that any doctor in the UCSDHS system is willing to take her as a patient. In the past, Defendants were willing to assign her a PCP, but only if she signed the Care Agreement, which she refused to do. She makes clear she would still be unwilling to sign the Care Agreement, even assuming the reinstatement offer were still open. (FAC ¶ 20.)

Construing Larkins' claims liberally, it appears she wants to be reinstated as a patient in the UCSDHS system and also assigned a PCP, without being required to sign the Care Agreement. If those are her claims, a grant of injunctive relief would result in Larkins having a physician to communicate with, and she would have standing to seek that relief.

Defendants have asked the Court to strike Larkins' requests for injunctive relief, but for the reasons just discussed that request will be denied.

**Merits**

Defendants also argue that Larkins' claim fails on the merits, because Larkins was not engaging in First Amendment-protected activity. They argue that this case is analogous to a situation where an employee is terminated for engaging in First Amendment-protected activity. They also point out that Larkins' speech was not on a matter of public concern.

This argument misses the mark, however. Speech on matters of public concern is entitled to greater protection than speech on matters of private concern. *Snyder v. Phelps*, 562 U.S. 443, 452 (2011); *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 758–61 (1984). But even speech on matters of purely private concern is entitled to some First Amendment protection. *See Snyder*, 562 U.S. at 452 (citing *Hustler Magazine v. Falwell*, 485 U.S. 46, 56 (1988)) ("[W]here matters of purely private significance are at issue, First Amendment protections are often less rigorous.")

Defendants also argue that conditioning Larkin's continuation as a patient on her acceptance of the Care Agreement did not, as she claims, violate her First Amendment rights. Here, they are on much firmer ground. A review of the Care Agreement attached the FAC (Docket 8 at 35–37) shows that although it would have limited Larkin's access, it does not amount to a First Amendment violation. This is true regardless of whether Larkins'

claims are based on restriction of free speech rights, restriction of petition rights, or a retaliation theory.

The Care Agreement attempted to require her to limit her communication to several different avenues. The Care Agreement would have required Larkins to "access care providers at UCSD as directed and requested by her PCP [Primary Care Physician]." (*Id.* at 36.) She was told not to email UCSDHS physicians. She could communicate with her PCP either via scheduled clinic visits, or through a messaging system. The Care Agreement cautioned that the messaging system was not to be used for messages requiring urgent attention, because it was not necessarily monitored after hours and messages might take up to three days to be read. Messages would not necessarily be read by doctors, but might be read by associates. For urgent requests, Larkins was told to request an urgent clinic visit or, if she wished, visit an emergency department. Larkins could discuss complex issues by making an appointment with her PCP, who would determine medical need, whether the request was urgent, and whether it was appropriate for an in-office appointment.

As a matter of law, these limitations do not amount to a violation of her First Amendment right to petition. *See Smith v. City of San Diego* 447 Fed. Appx. 770 (9th Cir. 2011) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 131 n.6 (1977) (the restriction of some avenues for petitioning the government does not violate the First Amendment).

The limitations do not infringe her right to free speech either, because there are no limitations on what she may say; the only restrictions are reasonable time, place, and manner restrictions. *See Clark v. Comm. for Creative Non-Violence*, 468 U.S. 288, 298 (1984) (reiterating that "reasonable time, place, or manner restrictions on expression are constitutionally acceptable"). The Care Agreement promises that UCSDHS personnel would listen to her. But its terms also implicitly limit the manner and amount of communication, such that she could not choose who had to listen to her, when, or for how long. Nor could she choose the kind of reply she would get. Larkins seems to take this as a limitation on her free speech rights. But the right to free speech doesn't include the right to compel unwilling

audiences to listen. *See, e.g., Rowan v. U.S. Post Office*, 397 U.S. 728, 738 (1970) ("[N]o one has a right to press even 'good' ideas on an unwilling recipient."); *Kovacs v. Cooper*, 336 U.S. 77, 86–87 (1949) (explaining that there was no First Amendment right to compel unwilling listeners to listen to messages broadcast from sound trucks). Larkins has no right to compel doctors to talk with her, to read and reply to her messages personally, or to schedule appointments as often as she wants so she can air grievances.

The FAC concludes that Defendants were intending to silence Larkins altogether by forcing her into acceding to the Care Agreement. But the Agreement does not bear this out. It would have provided that Larkins would be a UCSDHS patient with a physician assigned to her. as long as she complies with its terms. These terms would not have prevented freely Larkins from speaking out to others outside UCSDHS. The Court is not required to, and does not, accept the FAC's unwarranted conclusions about the legal effect of the Care Agreement. And its suggestions about what might have happened had she signed it are speculative rather than factual.

The provisions of the Care Agreement also do not give rise to a retaliation claim. One of the elements of such a claim is that the government's action against a plaintiff be the kind that would "chill or silence a person of ordinary firmness from future First Amendment activities." *See Schroeder v. Diamond Parking, Inc.*, 646 Fed. Appx. 505, 505 (9th Cir. 2016) (quoting *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999)). They set reasonable boundaries, and Larkins does not identify any reason why they could not be imposed on any patient, even if there were no concern about the patient's behavior.

In short, terminating Larkins from Concierge Medicine did not violate Larkins' First Amendment rights, because she says she herself withdrew from it and does not want to rejoin. Conditioning her continued participation as a patient on her signing the Care Agreement also did not violate her First Amendment rights, because the Care Agreement itself did not violate her rights, nor did this requirement amount to retaliation.

Finally, even assuming Larkins had stated a claim, the Court would weigh four factors in determining whether to grant her injunctive relief: 1) whether she has suffered irreparable

injury; 2) whether remedies available at law (such as damages) are inadequate to compensate for that injury; 3) the balance of hardships; and 4) whether the public interest would be served by the injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Based on the facts pled, and weighing all four factors, Larkins would not be entitled to injunctive relief.

Among other things, there is no reason to believe that Larkins needs to be a patient at UCSDHS rather than going somewhere else. And even assuming she became a patient there, it is unclear why she would need to communicate her concerns freely with a broad range of UCSDHS personnel as before. The fact that she wanted to discuss her concerns about the quality of care in the past does not mean she is likely to have similar concerns in the future. Nor does it mean that, even if she does have such concerns, they would not be addressed and she would need to communicate them to other UCSDHS personnel. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 98 (2013) (citing *Los Angeles v. Lyons*, 461 U.S. 95 (1983) (holding that an injury in the past, without a real and immediate threat of its being repeated, did not establish a justiciable claim for equitable relief).

**Conclusion and Order**

For these reasons, the motion to dismiss is **GRANTED IN PART**. The FAC is **DISMISSED WITHOUT PREJUDICE**. But because it is not absolutely clear the defects have could not be cured by amendment, Larkins will be given an opportunity to amend. If Larkins believes she can successfully amend, she must file a motion seeking leave to amend no later than **October 2, 2017**. She need not obtain a hearing date for this motion, but may file it *ex parte*. But she must attach her proposed second amended complaint as an exhibit. If she files a motion by October 2, Defendants may file an opposition by **October 23, 2017**. If Larkins wishes to file a reply, she may do so no later than **November 3, 2017**. The parties must obey the Local Rules' requirements for briefing; if they do not, their submissions may be rejected for filing, which could cause them not to be filed on time. If Larkins moves for leave to amend, the Court will set a hearing if appropriate. But if not, the matter will be deemed submitted on the papers after the parties file their briefing.

If Larkins does not seek leave to amend by October 2, the Court will construe it as her admission that she cannot correct the defects this order has identified and that her claim may be dismissed.

**IT IS SO ORDERED**.

DATED: September 11, 2017

*[signature: Larry A. Burns]*

**HONORABLE LARRY ALAN BURNS**
United States District Judge